Good morning. May it please the Court, my name is Frederick J. Daley, Jr. I'm going to counsel, and Your Honors, I'd like to reserve two minutes of my time. In the cases of Meyer and Flores in the Ninth Circuit, it's stated that it's difficult to imagine any circumstances where the government defends underlying agency actions that are not based on substantial evidence but are yet substantially justified under an Equal Access to Justice Act. Counsel has submitted the Campbell case and says this is the unusual situation where the agent fees should not be paid. However, at Campbell, that was an issue of onset date, so was this. Could I ask you a question, just a threshold question? I found this case very confusing. So here the ALJ, another panel of our court, said the ALJ made a number of legal errors. But the district court said, well, notwithstanding the legal errors, the determination of the ALJ was substantially justified. There was evidence in the record supporting its holdings. So which are we looking at? You mentioned substantial evidence, but the district court said there was substantial evidence supporting its determination. We said there was legal error. So what is substantially justified in this context for the ALJ? Well, I would say that we have to look at the Court of Appeals decision where all five arguments that the plaintiffs made were approved and reversed. It's the legal error is the main focus. And the main legal error in this case would be that the under the, and this is what I'm getting to about why the onset date in the Campbell case doesn't matter, because the legal error is that the administrative law judge found that Mr. Herron could do sedentary work. Mr. Herron was 55 and over, under the grid rules at 201.07. If one cannot perform their past work at step four, either as it was performed or as generally performed in the economy, and as this court reversed on step four, finding that the administrative law judge did not follow Social Security ruling 82.61. Did we miss the fact that the BE, that the ALJ could rely on the Dictionary of Occupational Titles? So did the panel itself make an error? Not at all. What the panel did was it found that under Social Security ruling 82.61, that the administrative law judge, once he finds a step four, that the claimant cannot perform his past work as he performed it. It's a very specialized job, disaster area sites that the plaintiff would examine and analyze. And at that point, the vocational expert said that he was a consultant, so therefore consultant jobs are generally sedentary. However, 82.61 and what the Ninth Circuit affirmed, reversed on, is that under that ruling that you cannot use a generic job and just say somebody's a consultant. A consultant at what? You could be a consultant at many, many different things in many different fields. I thought the rule said you could use the generic job. No, 82.61 says you cannot use generic. It says that this generally would be unreasonable and fallacious to use generic jobs. So that's the first test. And then it says under the test, the third test, if the claimant cannot perform the excessive functional demands and or job duties actually required in the former job, but can perform the functional demands and job duties as generally required by employers through the economy, the claimant should be found to be not disabled. So isn't that what the ALJ said? I'm not sure what the ALJ said here, actually, because it was so conclusory, but certainly was entitled to rely on the DOT, it seems like, based on 82.61. Well, I'm sorry, but that there's no such, if he can't do his, there's no such DOT job for this disaster relief job that he had. It's not performed generally in the economy. I guess I have much the same problem that my colleague does, and that is it seemed to me that Heron had the burden of proving his inability to return to his former type of work and not just his former job. And it also seems that the regulations, which we have now referenced, give three different tests for determining whether the claimant can perform his past relevant work. Now, when I read what my colleagues did in this decision, they said ALJ missed number one. If you're going to go number one, it couldn't get there. But it didn't seem that they even addressed two or three at all. And, frankly, I have a tough time understanding why, if they didn't address it and the government argues that two or three might be appropriate and they just return this to have the underlying court think about it, that that house somehow makes it a not substantial, able to make the argument. When I look at these things, and I may be wrong, but when I look at these things, I think it seems to me that the government should not have a reasonable justification to go and make these things if we have a case dead on point. And if we have a case dead on point, the government ought not make that argument, and the ALJ ought not make that determination. But here, that's not what happened. There's three different tests. And the only one that my good colleagues talked about is the first test. Two and three they left out. And, frankly, I don't see why the ALJ's assessment couldn't be a two or three decision. Two or three of that test in that regulation, why they couldn't have used two or three. Okay, I'm sorry. Which one? Could you say what two and three were again? Well, number one is whether the claimant retains the capacity to perform a past relevant job on a broad generic. Number two is whether the claimant retains the capacity to perform the particular functional jobs and jobs duties peculiar to the individual job. And three is the one that Judge Ikuda talked about. Those are the regs. That's what the regulation set out as what has to be proven. Right, and when you can't perform your past job. All my colleagues said, and I read it very carefully, is that they shouldn't have relied totally on one, that one was done wrong. I don't see any conclusion as to the second or third test. So if the ALJ didn't follow the Social Security ruling. It followed the third item, arguably. In other words, the ALJ said he can perform past relevant work, see DOT regs and what the VE said. And this part of the rule, Rule 8261, says it can be based on duties as generally required by employers throughout the economy. That's okay. So the rules say it was okay for the ALJ to rely on the DOT. Now, the ALJ may still have gotten the RFC wrong. I'm using way too many acronyms here. But I believe what that means is it goes at that point to Step 5. That's not what this says. This 8261 doesn't say it's been Step 5. I mean, the job that the vocational expert gave, the DOT, is not a particular job. It's just his consultant. It could be a consultant in the clothing industry, in the banking industry, in anything. It's nothing that he's done. You have to take the skills that he has, and then once the ALJ finds that he can perform sedentary work, identify the skills and state whether or not there are any sedentary jobs that he can perform. Go ahead. So are you saying that the Step 3 in Rule 8261 that says you can look at other types of consultant work as ordinarily required by employers throughout the national economy, is that Step 5 of the test, so that the burden had shifted to the government? I would say that at that point, you'd have to name a job. Well, yes, we'll go to Step 5 if it's not your past work. This says purpose, to clarify the policy in determining whether a claimant can perform his or her past relevant work. So it does seem to be at Step 4. Right, but if it's a job he's never performed. He's a very broad-based consultant. There's nothing that he performed that the vocational expert came up with at sedentary level that he could do. So you're saying this rule may apply in some cases, but not to a job like consultant, which is so general it could mean anything. Is that the position? Yes, generally. I mean, I read 8261 as Step 4 or Step 5 is that if you can't do your past work as you performed or as generally performed, but your job, and I can give you an example of a packager. You're a packager doing certain packaging, but not packaging anything. That if they can't name a job at the sedentary level that you have performed, then they have to look at whether you have skills that are transferable to sedentary. I guess I'm having a tough time finding that case which would say what you're suggesting. I mean, if I read these RUIT regs as I did and I read through them, I guess I'm trying to figure out why that's what that says. If there is one, cite it, and I'll look at it and see if it's so. But to be fair, I looked at what we have to do at Step 4, and I looked at past relevant work, and I looked at the three different tests on which the claimant should bear the burden of proof, and I'm having a tough time saying why then it's outside of what the government should have done to argue that two or three might have been available. Well, the court also found on four other arguments, for instance, on the credibility. Okay. Let's move to credibility. It seems to me your best argument is in credibility. I would agree with that. It seems to me your best argument, and I don't know whether it seems to me on both I've got to have substantial justification for both what the agency did and what the government did, and I don't know that I can find it on what the agency did. So past relevant work, here I'm a little worried about it. So then we go to medical evidence. If we go to medical evidence, again, I'm having a tough time why when we're talking about ketosis, and I'm not sure I say that right because I'm from Idaho, but his report, it's my understanding that the ALJ gave limited weight to the opinion, indicating a functional capacity applied back to 1983, but he didn't even start evaluating until 2005. Right, but he had medical evidence that went back much further, and Heron stopped working until 2000. What our court said was you can't just do that, cannot be disregarded, because they occurred after the last insured date, and they cited Smith for that. But I can't really say they gave no weight to what ketosis said. In fact, it seemed to me that he might have even applied some of ketosis report in the hypothetical to the vocational expert. Well, the court also said that they gave great weight to the non-treating doctor. Well, I can go there next if you want to go there. But I'm just trying to look at this evidence as it goes and what the government's arguments are. Are you suggesting that if two of the three arguments are bad, you shouldn't have gone there, that that means you automatically win on an abuse of discretion review? Because to be fair, if I went through these and I looked about what the government might argue and what it might not argue, I think you pick out your best ones when you talk about the state report and the credibility. But on the others, I'm having a tough time understanding why those, the agency missed and the government missed an argument based on what happened in this decision. Okay. I guess that's my question. How many issues do you have to win on? Well, it's not argument counting. It's just if you have one main, if you have one argument, one issue that the government is not substantially justified or the agency is not justified with the government not following established law, with the administrative law judge not following the regulations or the rulings, then that's enough. What case says that? Flores. Flores and Meyer. I don't think that's what Flores says. I mean, to be fair, I read Flores very carefully. And I am giving a review which is abuse of discretion beyond the pale of reasonable justification. So I'm looking at all this case as a whole and I'm saying, how do I get there? I don't think Flores says it. What was the language in Flores that should really convince me? Well, I had, as I recall, it was difficult to imagine any circumstances where the government defends underlying agency actions and is substantially justified. Okay. So that's the language. And I think in Meyer also. You have about 17 seconds left. We'll give you a minute for rebuttal. Okay. Thank you. Good morning. Shay Bond on behalf of the Commissioner of Social Security. It is our position that the district court did not abuse its discretion in finding that the government's position both at the agency level and its litigation position for the lower court was substantially justified. Can I ask you about the government's litigation position? So the ALJ, the court found that the ALJ made several legal errors. And in going back and matching what the ALJ did against our requirements for what the ALJ has to say, the ALJ skipped all sorts of steps and made errors in the statements it made. Now, when the government goes to defend that, the cases say, don't worry about what might happen in the final disability determination. Look at the government's position at that stage. So at that stage, the government is defending an ALJ determination, which is riddled with legal errors. So why is the government's litigation position substantially justified under those circumstances? Well, we're starting out from a position where the case law Supreme Court precedent, circuit precedent here states that simply because there is a lack of substantial evidence or the government loses the case, that doesn't make the EJ an automatic fee-shifting statute. You do need to apply a substantial justification standard. Well, that's not my question. My question is the ALJ's opinion was riddled with legal errors. When the government is looking at whether to defend it or not, they can see all the legal errors. What makes that justify to defend an ALJ decision that I think we would all agree was erroneous in that it didn't meet the Ninth Circuit standard? Well, it certainly did not meet the Ninth Circuit standard. When the government's evaluating the ALJ's decision, we are looking at the facts of the case, and we're also looking at, you know, the regulations, rulings, and case precedent. We did believe that this ALJ's decision, given the totality of the circumstances, was defensible. When we filed our briefs below and up in the appellate court, we did cite the regulations, rulings, and case law we believe supported the ALJ's decision. So you thought you could defend the credibility determination? Yes. On what basis? I can explain that. So this court in remanding found that the ALJ had just relied on objective findings to discount the claim's credibility. When we argued this case below and up before the appellate court, we argued that that wasn't the sole basis that the ALJ had cited. We had said that in addition to the ALJ examining the objective findings of the foot impairment, that the ALJ had also considered the types of treatment that the claimant had received or actually didn't receive much treatment at all before the relevant period. There's absolutely no treatment at all during the insured period, and then very little treatment thereafter. Well, I know you would do a better job than the ALJ. The ALJ said only discrepancy in the medical records. We say to reject that sort of excess pain testimony, the ALJ has to provide specific, clear, and convincing reasons. Correct. And I'm just going to – And that was not right, that just to say there's a medical discrepancy. There's a discrepancy between his statements and the reports. That was all the ALJ said. Well, from the government's position when we were arguing this below, and again we understand that this court did find that that was an error, but we did cite areas within the ALJ's decision where we believed that the ALJ went beyond just what the objective evidence said. And so we had excerpts of record at page six. It's page, I guess it's page three of the actual ALJ's decision, where first he talks about what the objective evidence talked about. Then he starts talking about the treatment that the claimant received, that he was given the use of arch supports. So he went through, the ALJ went through the facts. Correct. But its determination, it didn't rely on the facts to give a specific reason. It just, it went through the medical history, it went through all the facts. I know the district court like pulled out these inferences. Again, the district court did a better job than the ALJ. Well, that's my question. Can we rely on the ALJ's position or say that was substantially justified if it was for reasons that the district court gave, not the ALJ gave? Well, I think, again, when we're looking at a credibility analysis, an ALJ will typically kind of go through what the evidence said and then will draw conclusions from that evidence. Now here, you know, I agree, the ALJ probably should have articulated this a little bit better. Well, let me just give you an example. If you recall, the ALJ found that Mr. Heron was capable of performing his past relevant work as a disaster consultant. And just trying to figure out if we can find that that is a reasonable conclusion based on Mr. Heron's continuing work to do that work despite his foot pain when the ALJ didn't rely on that. I think the district court offered that. The district court elaborated on the ALJ's decision. But if we're talking now about the past relevant work. But the ALJ didn't rely on that. Well, the ALJ relied on the vocational expert's testimony. The vocational expert had examined the claimant's very detailed resume and then gave opinions based on the RFC that the ALJ had presented in the hypothetical question and then based on information contained within the Dictionary of Occupational Titles code. Let's just assume that we disagree. Can you just answer my first basic question? Can we rely on something or say that it's substantially justified if the ALJ did not rely on it? Just yes or no. I would say yes, we can. Because at the merit stage, when you're looking at substantial evidence standard, the court is supposed to look at the record as a whole. And so that's what the district court was doing, say, during the merit stage, was looking at the record as a whole and to see what factual basis would have supported the ALJ's finding. Now, granted, this court found that the ALJ's analysis of Step 4 was not complete. But when we're looking at a substantial justification standard, you're looking to see if the ALJ's decision, what was the ALJ thinking at this time? Would a reasonable person think that what the ALJ stated was sufficient? And I think here, when we're looking at what the ALJ articulated at Step 4, he did identify what the claimant's past job was. He was a consultant. And I'm very troubled because if we're sitting as a merits panel, if we were the prior panel, we don't look behind what the ALJ stated. We look at what the ALJ statements, we say, under SECV Chain Re, we can't uphold them on a different basis than what he stated. And the ALJ made legal errors. I think we would be bound to strike it down just like the prior panel was. Why now, when we're looking at whether the government's litigation position, do we look behind what the ALJ did to the material in the record? We couldn't do that as a merits panel. Well, yes, I understand that. But when we're looking at substantial justification, you're looking to see would the ALJ's actions have been reasonable, given this fact pattern, given this record. And so we do, and what the ALJ actually said in the decision. But then move to the government's litigation position, not to the ALJ's. So even if I thought the ALJ made legal errors, but all of its holdings were supported by the record, when the government takes that case and they see all those legal errors, let's assume, I know you say you could defend the legal errors, but let's assume that I disagree. If we have this string of legal errors, can we nevertheless find that the government's litigating position was substantially justified? Well, I would look to the Hardesty case. In Hardesty we had an ALJ who it was a credibility analysis that was in error. And so each and every one of the credibility factors that the ALJ had assessed was found to be completely erroneous. And it was so erroneous that the district court found that this case had to be remanded and paid on that record. And then that same court found substantial justification at each stage. So coming up on appeal, this court upheld that decision and found that there was no abuse of discretion. And so the court, obviously there was legal errors there because the ALJ didn't conduct this analysis. He had completely blown it when it came to describing what the evidence actually said. He said he didn't give the claimant a fair shake and saying that the claimant had explained certain inconsistencies that the ALJ believed existed. And so this court said, well, the government was able to point to some pieces of evidence in that record to establish why the ALJ thought he was reaching the proper conclusions that he did. So I would point to Hardesty as saying that the government can kind of go into that record and the lower court as well to establish. I'm sorry. I guess I have another question which comes with this a little bit differently. It seemed to me that the district court found the agency's decision was deficient in determining whether it should award fees. In fact, it seemed to me the district court concluded that the ALJ failed to sufficiently articulate a credibility determination. Then after making that determination, it went to evaluating the government's litigation position. Now, if I'm going to uphold this on abuse of discretion, it seems to me that that's the error that I can't get to because in order for this to be something where the government, where fees should not be paid, it seems to me the agency decision as well as the litigation position must be justified. It seemed to me the district court said the agency didn't do a good job and then moved to the government's litigation position, finding that that was substantially justified. It seems to me it missed the very test that it needed to make in credibility, which was that the agency did a fine job. It said they failed to articulate the credibility determination. So how do I uphold that on abuse of discretion? I think the way to explain that is that the district court actually probably didn't articulate its analysis maybe as clear as it should. I think it was referring to what the errors that were found by the appellate court when they were assessing for substantial justification purposes. I just don't think that they were trying to reiterate what the appellate court was finding was the error. Well, I understand that the district court was not really happy with us, but I tried to figure out what was the final determination. And I couldn't find anything where he said, where the district court at all said, that the ALJ had sufficiently articulated a credibility determination. In fact, quite the opposite, but moved directly to the government's litigating position, therefore eliminating the one part of abuse of discretion on credibility that I would have to say that's an abuse. Either you've got to say the ALJ did a good job, and now we move to the government, or you've got to move to the government and talk about them and then come back to the ALJ. But to me, if you're reviewing this on abuse of discretion, that's the problem. Well, I think we need to read, I think you're referring to the actual district court order itself. Correct. And so the district court, though, did adopt the magistrate judge's findings and recommendation. And so I think when you look to the findings and recommendation, it gets more into that analysis of what the agency did at the agency level. I don't think there's anything you can find, either in the magistrate or the district court, that said this agency decision was sufficient. Well, I would look to, again, the findings and recommendation. That's on page, excerpt of record 24. And so there we start with how the ALJ's, you know, credibility finding started. Then it talks about what the legal basis can be for an ALJ relying on objective findings. And then went through and talks about how the ALJ considered all the evidence in the record in rendering his decision, and then says the medical evidence was supporting that the ALJ's finding, the claim it could do sedentary work. All right. So I think when you read both of the magistrate judge's findings in conjunction with the order adopting, and typically I feel like when you see an order adopting, it just kind of blanketly adopts. Well, I appreciate what you're arguing. I guess we disagree. Let's go to the second, which I think is the more significant question. In my mind, there is no justification for both the ALJ and the government as it relates to the credibility determination or as to adopting the state stuff. The state agency, doctor? Yes. And so I say to myself, okay, I see no justification there. But I do find some justification as it relates to past relevant work, as to Atosis' RFC report, as to VA disability ratings determination. So I kind of go through and look at all of that, and I can see some substantial justification. What do I do in those circumstances where I find some places I think the government was dead wrong and other places the government had a chance? Well, I think you need to look at the totality of the case. We have a case here where it was a remote period that we were talking about. The claimant did not file for benefits until after his insurance status expired. We're looking to see what, again, at the substantial evidence stage, you're looking at the record as a whole, and that's what the ALJ does. So in this record, we had a claimant who had flat feet, who received essentially no treatment for this condition either before or after the insured period and none during the insured period. The totality of the circumstances, given that the ALJ, if we're finding this justified in other areas, but if you find that maybe on one or two issues that there's less justification, I think you need to look at the case as a whole at that point. Is there a good case I can look at? Because I looked for one and didn't find it. Your Honor, I cannot think of one off the top of my head, but I don't think necessarily that issue has been fully addressed in a published case in this circuit. But I think when you're looking at substantial justification, you have to look to was there a genuine dispute over what the ALJ's findings were in this case. And so I think when you kind of link each issue that was adjudicated, given the facts of this record, this is unusual. We don't see too many cases where you have a remote DLI where there's little to no evidence in the record. And I think when you look at this ALJ's decision, the ALJ himself had attempted to engage in these analyses, and it's not that he ignored evidence. It's just that he didn't articulate it properly. And I think when you look at the substantial justification case on the circuit, it's those circumstances where we find a substantial justification. It's where the ALJ completely ignores evidence, fails to discuss evidence, where this Court has found a lack of substantial justification and abusive discretion. And I would argue that this case falls in the form where there is no abusive discretion. Sorry, I know you're out of time, but I just wanted to talk about the VA rating. It seems to me looks like the ALJ discounted or may have discounted the VA's disability rating. What's your explanation on that? Well, we ‑‑ Because of the time period, it's simply that it was outside of the appropriate time period, and I think you're trying to make another argument. I didn't quite understand it. Well, it was our argument below that the ALJ had ‑‑ and he did say he had given it the disability rating great weight. He explained what the rating was based upon, which is the same impairment that he was considering below the foot impairment. And he also kind of juxtaposed how that was consistent with a sedentary RFC. So it's ‑‑ although this Court found that the ALJ had actually discounted the opinion, when you're looking at the ALJ's decision, he believed he was giving that opinion great weight. And because of the difference between the VA system and the SSA system, you don't have percentages of disability, given the nature of the impairment that the claimant was alleging in the VA was that he had no problems with sitting, but was limited to kind of these 10 or 15 minutes of walking at a time. It was our argument that the ALJ believed that his RFC for sedentary work was consistent with the VA rating. Okay. Thanks. Thank you. Okay. We'll give you a minute. Okay, thank you. I try to talk fast. I was just looking at that third prong on 8261, and I just wanted to point out that it does refer to whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily acquired by employers throughout the national economy. And in the decision at page 2, the Ninth Circuit did say that substantial evidence does not support the latter finding that the ALJ erroneously failed to take into account the actual physical demands of Herron's past work. I can tell you in the Seventh Circuit I'd have to do a cross-reference. The Gomblowski case does say that one strong argument is enough. The Jaffe case, which is not a Social Security case, basically says you don't want to penalize attorneys and their clients for making legitimate arguments that they might not win on. So, you know, if I didn't make two arguments that you have trouble with, but I only made credibility, then you'd pay an EGIF fee. But you've got to 8261 was one of the reasons why the case was reversed. So my point is that you have to make, as long as they're legitimate arguments, you should be penalized and not get anything on an argument counting approach. Thank you. Thank you. All right. The case of Herron v. Colpin is submitted, and we're adjourned for this session. All rise.
judges: Ikuta, Smith, Murguia